## OPINIONS OF THE JUSTICES.

### OPINION OF THE JUSTICES TO THE SENATE AND THE HOUSE OF REPRESENTATIVES.

*General Court.   Constitutional Law,* General Court.   *Contempt.   Special Commission.*

Disrespectful or contemptuous behavior by one not a member of the General Court before a special commission created by a resolve and composed of members of the Senate, members of the House, and other persons is not a contempt of the Senate or the House nor punishable by them under the Constitution, Part 2, c. 1, § 3, arts. 10 and 11.

On April 22, 1954, the Justices submitted the following answers to questions propounded to them by the Senate and the House of Representatives.

To the Honorable the Senate and the Honorable the House of Representatives of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions set forth in an order adopted by the House on April 1, 1954, and by the Senate in concurrence on April 6.   The order was transmitted to the Justices on April 7.

From the recitals in the order it appears that the special commission established by c. 89 of the Resolves of 1953 to study and investigate communism and subversive activities and related matters, in the course of its investigation, summoned one Otis A. Hood to appear before it.   Upon his appearance accordingly at a public hearing he refused to be sworn as a witness without first receiving witness fees to which, according to the order, he "wrongfully claimed he was entitled prior to being sworn as a witness."   He

stated to the commission, "I think it would be preferable if you pay the fee as you are supposed to. . . . You are asking for eighteen thousand dollars for more funds. What are you doing with it, padding your expense accounts? . . . I will not take the oath without the money. Why don't some of you loan it out of your pocket? You have plenty . . . ." When informed by the chairman that the commission would not be drawn into an argument with him, he stated, "I would like to have an argument." Nothing further appears as to the conduct of Hood, and we therefore assume that he continued in his refusal to take the oath and that he did not testify.

The questions submitted are these:

"1. Is the Special Commission established under chapter eighty-nine of the Resolves of nineteen hundred and fifty-three a committee or commission of the General Court so that disrespect or contemptuous behavior toward it by a witness duly summoned by it to give testimony before it, constitutes contempt of the General Court within the meaning of Articles X and XI of Section III of Chapter I of Part II of the Constitution of the Commonwealth?

"2. Does the General Court have power and authority under Articles X and XI of said Section III to adjudicate in contempt and punish a person who was guilty of disrespectful and contemptuous behavior, as above described, before such Special Commission?

"3. If the General Court has such power and authority, must the person who was guilty of such disrespectful and contemptuous behavior be brought before the bar of the General Court and heard before being adjudged in contempt and ordered committed?"

The exact wording of arts. 10 and 11 of § 3 of c. 1 of Part 2 of the Constitution is of importance in answering the questions, and we therefore quote these two articles in full.

"X. The house of representatives shall be the judge of the returns, elections, and qualifications of its own mem-

bers, as pointed out in the constitution; shall choose their own speaker; appoint their own officers, and settle the rules and orders of proceeding in their own house: They shall have authority to punish by imprisonment, every person, not a member, who shall be guilty of disrespect to the house, by any disorderly, or contemptuous behavior, in its presence; or who, in the town where the general court is sitting, and during the time of its sitting, shall threaten harm to the body or estate of any of its members, for any thing said or done in the house; or who shall assault any of them therefor; or who shall assault, or arrest, any witness, or other person, ordered to attend the house, in his way in going or returning; or who shall rescue any person arrested by the order of the house. And no member of the house of representatives shall be arrested, or held to bail on mesne process, during his going unto, returning from, or his attending the general assembly.

"XI. The senate shall have the same powers in the like cases; and the governor and council shall have the same authority to punish in like cases. Provided that no imprisonment on the warrant or order of the governor, council, senate, or house of representatives, for either of the above described offences, be for a term exceeding thirty days.

"And the senate and house of representatives may try, and determine, all cases where their rights and privileges are concerned, and which, by the constitution, they have authority to try and determine, by committees of their own members, or in such other way as they may respectively think best."

Chapter 89 of the Resolves of 1953 provides for the creation of a "special commission" to consist of two members of the Senate to be designated by the president thereof, three members of the House to be designated by the speaker thereof, and two persons to be appointed by the Governor.

The resolve contains the following paragraph pertinent to the questions:

"Upon a majority vote of the commission, summonses shall be issued under the signature of the chairman or vice chairman, and shall be served by an officer of the general court or by any person designated by the commission. The chairman or any member of the commission may administer oaths to witnesses. Every person who, having been summoned as a witness by said commission, or any sub-committee thereof, wilfully makes default, or who, having appeared, refuses to answer any question pertinent to the investigation hereby authorized, shall be guilty of contempt and shall be subject to a fine of two hundred dollars or by imprisonment for not more than one month, or both."

In our opinion the power to punish by imprisonment for contempt as defined and limited by arts. 10 and 11 refers only to contempt of the Senate and the House and the Governor and Council as they are respectively the embodiments of the legislative and executive powers of the Commonwealth. The contempts which the framers of the Constitution had in mind were, we think, such as would constitute affronts to the dignity and sovereignty of the people as represented by their principal elected legislative and executive officers or a direct obstruction to the performance of the functions of those officers. The first part of art. 10 as far as the colon mentions only what may be considered the internal affairs of the house itself. Then follows the provision for the contempt power. This applies only to persons not members who shall be guilty of "disrespect to the house, by any disorderly, or contemptuous behavior, in its presence" or of the specified threats or acts of violence against members or witnesses or other persons ordered to attend the house. In our opinion powers of this kind cannot be extended so as to include alleged contemptuous acts committed outside of the house before any commission composed of members of the house and others.

Such acts are not "disrespect to the house, by any disorderly, or contemptuous behavior, in its presence." The powers of the Senate are by art. 11 the same as those of the House of Representatives. If each house, to say nothing of the Governor and Council, can exert its contempt powers as enumerated in art. 10 so as to include the punishment by the house itself of alleged contempts committed before various committees or commissions composed of one or more members of the house together with persons not members, it would be possible to create a wide area within which legislative contempt might operate, to which it would be difficult to define limits, and which we cannot believe was contemplated by those who drafted or those who voted for the comparatively narrow provisions of art. 10. And we believe that this is so even though the committee or commission may be assigned tasks which will aid the General Court in the performance of its legislative duties.

The area into which legislative contempt could be extended, if the rule were otherwise, is more easily appreciated by reference to some of the resolves of the last few years creating commissions having power to summon witnesses and composed in part of members of the General Court and in part of persons not members. In two of these the legislative members are in the minority. Res. 1945, c. 41, c. 83. In another they comprise half of the commission. Res. 1947, c. 71. Other instances of mixed commissions having power to summon witnesses are found in Res. 1945, c. 68; Res. 1949, c. 29; Res. 1953, c. 65, c. 100. Some of the nonlegislative members are State or local officers of differing ranks; others are private citizens; and in a few instances designation of members may be made by certain persons holding no official positions. If we include other mixed commissions not having power to summon witnesses, but against which contemptuous conduct might be possible in ways other than by refusing to testify, the list will be considerably enlarged. See Res. 1945, c. 69; Res. 1947, c. 53, c. 57, c. 58, c. 69; Res. 1948, c. 68; Res. 1949, c. 28; Res. 1953, c. 52, c. 76; Res. 1954, c. 20.

We do not overlook decisions and legislative practice upholding the proposition that contemptuous conduct before a committee composed entirely of members of a house is a contempt of the house. See *McGrain* v. *Daugherty*, 273 U. S. 135; Landis, Constitutional Limitations on the Congressional Power of Investigation, 40 Harv. L. Rev. 153. There is a suggestion along this same line in *Burnham* v. *Morrissey*, 14 Gray, 226, at pages 239, 240, 241, where, however, the power of the house to deal with contemptuous behavior before a committee appears to have been referred to the inherent or implied powers of the house rather than to those expressly delimited by art. 10, so that, according to "common parliamentary law and custom" (page 239), imprisonment in such a case could not extend beyond the end of the session. See *Anderson* v. *Dunn*, 6 Wheat. 204, 230–231. Where the contempt occurs before a committee composed entirely of members of the house it is possible to regard the committee as a working part of the house, and to say that while the committee is performing its duties it is invested with the dignity of the house itself so that contemptuous conduct against such a committee is directed against the house as a whole. *McGrain* v. *Daugherty*, 273 U. S. 135, 156. We do not think it possible to take this view in the case of a commission composed in part of persons not members of the house. Such a commission is not a part of the house but is merely an independent body to which certain members of the house as individuals belong.

In the foregoing discussion we have, of course, had no occasion to consider whether Hood could be compelled to testify before the commission by means of proceedings under G. L. (Ter. Ed.) c. 233, § 10, or whether he could be prosecuted criminally under the provisions of the resolve of 1953 hereinbefore quoted.

In this opinion we have for convenience used the word house as a common noun. Except as otherwise indicated by the context, it refers equally to the Senate and to the House of Representatives.

To question 1 we answer "No."

To question 2 we answer "No."

In view of these answers question 3 has become inapplicable.

> STANLEY E. QUA.
> HENRY T. LUMMUS.
> JAMES J. RONAN.
> RAYMOND S. WILKINS.
> JOHN V. SPALDING.
> HAROLD P. WILLIAMS.
> EDWARD A. COUNIHAN, Jr.