FLORENCE H. LUSCOMB *vs.* PHILIP BOWKER & others.

Suffolk.    March 9, 1956. — July 25, 1956.

Present: QUA, C.J., RONAN, WILKINS, COUNIHAN, & WHITTEMORE, JJ.

*General Court. Special Commission. Constitutional Law*, General Court,
    Who may question constitutionality. *Equity Pleading and Practice*,
    Process, Parties, Motion to dismiss, Demurrer. *Jurisdiction*, Raising
    question of jurisdiction. *Moot Question*.

No motion to dismiss similar to that common in actions at law exists in
    equity practice in Massachusetts. [472]
A so called motion to dismiss filed by the defendant in a suit in equity
    was treated as a demurrer where it did not allege any facts not alleged
    in the bill and did not deny any facts alleged therein. [473]
A demurrer to a bill in equity is a proper method of raising the question
    of the court's jurisdiction over the subject matter of the bill. [473]

---

[1] On September 27, 1956, it was ordered as follows: "It appearing that the
appellants have not returned the child to the custody of the appellee in ac-
cordance with the rescript[s] dated July 24, 1956, the appeals are dismissed."
— REPORTER.

Members of the General Court and the clerks of the House of Representatives and the Senate are not immune from the service of civil process, not involving arrest, in a proceeding designed to test the validity of official action by them alleged to violate constitutional rights. [473–475]

The plaintiff in a bill in equity against members of the General Court and others as members of a special commission existing under certain resolves to investigate Communism and subversive activities and against the clerks of the House of Representatives and the Senate, alleging that the commission had filed an interim report with the General Court naming the plaintiff as a member of the Communist Party or engaged in subversive activities according to "creditable evidence" received by the commission, and that the references to the plaintiff in the report, its publication, "imminent further publication," and its incorporation in the records of the commission and of the General Court violated constitutional rights of the plaintiff, and praying for appropriate relief, was entitled to present her case in court and for that purpose to have civil process issued against the defendants. [475–476]

A suit in equity for relief respecting references to the plaintiff, allegedly violating her constitutional rights, contained in an interim report to the General Court of a special commission established to investigate Communism and subversive activities had not become moot on the ground that by reason of the filing and publication of the report any harm suffered by the plaintiff could not be recalled, where it appeared that if the commission should comply with legislative directions as to its final report, yet to be filed, it would repeat such references to the plaintiff. [476]

BILL IN EQUITY, filed in the Superior Court on July 6, 1955.

The plaintiff appealed from interlocutory decrees by *Morton*, J., and a final decree by *Forte*, J., described in the opinion.

*Oliver S. Allen,* (*Lawrence D. Shubow* with him,) for the plaintiff.

*Arnold H. Salisbury,* Assistant Attorney General, for the defendant Grove and another.

*Thomas H. Bresnahan,* for the defendants Cashman and others.

*Howard S. Whiteside,* by leave of court, submitted a brief as amicus curiae.

QUA, C.J. This bill in equity, originally brought against ten defendants, alleges that seven of the defendants are members of the special commission first established by c. 89 of

the Resolves of 1953, and subsequently revived and continued[1] "for the purpose of conducting an investigation and study of the extent, character and objects of communism and subversive activities and related matters within the commonwealth; the diffusion within the commonwealth of subversive and un-American propaganda that is instigated from foreign countries, or of a domestic origin, and attacks the principle of the form of government as guaranteed by our constitution and all other questions in relation thereto that would aid the general court in enacting any necessary remedial legislation." The three other original defendants were the clerk of the House of Representatives, the clerk of the Senate, and the Treasurer of the Commonwealth. The plaintiff has subsequently caused the bill to be dismissed as against the Treasurer of the Commonwealth.

The commission consists of two members of the Senate, three members of the House of Representatives and two persons appointed by the Governor. It is commanded in broad terms to consider all aspects of the activities to which the resolves refer, including, but not limited to, educational, governmental, industrial and political activities. There are provisions in the resolves designed for the protection of witnesses who may be called before the commission and of other persons whose names may be mentioned and who consider their reputations to be adversely affected. Beginning with the renewal by c. 123 of the Resolves of 1954, a provision has been inserted requiring the final report of the commission to "include the name and all other identifying data available to the commission, of any individual, concerning whom, the commission, during the course of the investigation, has received creditable[2] evidence that such individual was or is a member of the communist party, a communist or a subversive." Resolves, 1955, c. 52. Resolves, 1956, c. 4.

---

[1] The most recent resolve extending and continuing this commission is c. 4 of the Resolves of 1956, approved February 2 of this year.

[2] The word "creditable" is obviously used in the sense now more commonly expressed by the word credible.

The allegations of the bill reduced to their lowest terms are these: On June 9, 1955, the commission filed an interim report with the General Court[1] in which it stated that a number of persons, including the plaintiff, "were members of the Communist Party or are or have been engaged in subversive organizations or Communist or subversive activities within the Commonwealth," with an intimation that "Those who follow the Communist line" "recognize initial loyalty to a foreign power," and that the commission has received "creditable evidence" that the plaintiff (naming her) has been a secret and prominent member of the Communist Party and has been active in furthering the cause of the Boston Freedom of the Press Committee along with other persons all of whom, according to "creditable evidence," are or have been members of the Communist Party or of subversive organizations and the "moving spirits" and the "most zealous" of the newer party members. At no time was the plaintiff apprised of the "creditable evidence" against her or given a fair opportunity to meet it. On motion of the defendant Powers the Senate voted that the names of the persons mentioned in the report of the commission, including the plaintiff, be printed in the journal of the Senate, and on motion of the defendant Bowker that two thousand additional copies of the report be printed. It is alleged that the reference to the plaintiff in the report of the commission, its publication and "imminent further publication," and its incorporation in the records of the commission and of the General Court violate the constitutional rights of the plaintiff, particularly arts. 12, 16, 19, 25, and 30 of the Declaration of Rights and the Fourteenth Amendment to the Constitution of the United States. It does not appear that the commission has yet filed its final report.

The prayers of the bill are for injunctive relief against further publication of the statements hereinbefore described to the effect that the plaintiff has been a secret member of the Communist Party and active in furthering the cause of the

---

[1] Referred to later in the bill as having been filed with the defendant Hayden, clerk of the Senate.

Boston Freedom of the Press Committee; for a declaratory decree that the report of the commission to the General Court as to these matters was in violation of law; and that the provision of c. 52 of the Resolves of 1955 requiring the commission to report the name and identifying data of any individual concerning whom it has received "creditable evidence" that such individual was or is a member of the Communist Party, a communist, or a subversive violates the Declaration of Rights; that the court order the defendants Grove and Hayden to expunge from the records of the respective houses of the General Court the foregoing matter concerning the plaintiff; and that the court order the members of the commission to expunge such matter from its report.

In the Superior Court the case took a peculiar turn. The bill was filed on July 6, 1955. On July 7 a subpoena issued directed to all of the defendants named in the bill. On July 18 and 19 service was made upon three members of the commission and upon the clerk of the Senate and the clerk of the House. On July 26 the five parties served filed or joined in filing papers entitled "Special Appearance and Motion to Dismiss" wherein each "without submitting to the jurisdiction" of the court but "protesting against such jurisdiction" and asserting that he was answerable only to the General Court (or in the case of the clerks to their respective houses) moved that the bill be dismissed. Thereupon the court not only purported to allow the motions but decreed that no further process issue in the case. The plaintiff appealed from each decree and also from a final decree dismissing the bill as to the defendants served and again ordering that no further process issue for service upon any other defendant.

The motions to dismiss were not in accordance with established equity practice. No motion to dismiss similar to that common in actions at law exists in equity. *Rothstein* v. *Commissioner of Banks*, 258 Mass. 196. *Weiscopf* v. *Commissioner of Banks*, 258 Mass. 199, 200. *Paraboschi* v. *Shaw*, 258 Mass. 531. *E. S. Parks Shellac Co.* v. *Jones*, 265

Mass. 108, 110. *Tyler* v. *Boot & Shoe Workers Union,* 285 Mass. 54, 55. *Commonwealth* v. *McHugh,* 326 Mass. 249, 254. G. L. (Ter. Ed.) c. 214, § 13. The cases just cited show that when a motion bearing that title is filed it will be treated as a demurrer or plea according to its contents. The motions here do not allege any facts not alleged in the bill and do not deny any facts that are alleged in the bill. Consequently they cannot be classified as pleas and are in effect demurrers. A demurrer is a proper method in equity of raising a question of jurisdiction over the subject matter alleged. *Rothstein* v. *Commissioner of Banks,* 258 Mass. 196, 197–198. *Gunter* v. *Arlington Mills,* 271 Mass. 314. These demurrers are solely on the ground of want of jurisdiction. The action of the judge was a sustaining of these demurrers on that ground. We so treat it.

We think there was error in that part of the final decree that refused process against the defendants not served. So far as we can discover a member or officer of the Legislature has no immunity from the service of civil process where no arrest is made. By c. 1, § 3, art. 10, of the Constitution a member of the House is exempt from arrest "during his going unto, returning from, or his attending the general assembly." It may be that by art. 11 the same exemption was intended to be extended to members of the Senate, although there are no express words to that effect. But no arrest has been made or is contemplated in this case.

Article 21 of the Declaration of Rights reads, " The freedom of deliberation, speech and debate, in either house of the legislature, is so essential to the rights of the people, that it cannot be the foundation of any accusation or prosecution, action or complaint, in any other court or place whatsoever."

In the early and exhaustively considered case of *Coffin* v. *Coffin,* 4 Mass. 1, a very liberal construction was given to the words of the Constitution last above quoted, and yet it was held that a member of the House was amenable to an action for slander for words spoken within the walls of the House to and in the presence of other members about a

matter pending before the House but not then under discussion. In *Burnham* v. *Morrissey*, 14 Gray, 226, at page 238, this court speaking through Mr. Justice Hoar, in a proceeding for habeas corpus against the sergeant at arms, who was acting by virtue of a warrant from the speaker of the House, issued by order of the House, said, "The house of representatives is not the final judge of its own powers and privileges in cases in which the rights and liberties of the subject are concerned; but the legality of its action may be examined and determined by this court. That house is not the legislature, but only a part of it, and is therefore subject in its action to the laws, in common with all other bodies, officers and tribunals within the Commonwealth. Especially is it competent and proper for this court to consider whether its proceedings are in conformity with the Constitution and laws, because, living under a written constitution, no branch or department of the government is supreme; and it is the province and duty of the judicial department to determine, in cases regularly brought before them, whether the powers of any branch of the government, and even those of the legislature in the enactment of laws, have been exercised in conformity with the Constitution; and if they have not been, to treat their acts as null and void." And in *Emery's Case*, 107 Mass. 172, also habeas corpus against the sergeant at arms, Mr. Justice Wells, after consultation with the other justices, said on pages 182–183, "No one will contend, of course, that the legislature is not limited in its powers by the provisions of the Constitution, equally with all other departments of the government and the whole body of the Commonwealth, whether undertaken to be exercised in the ordinary form of laws enacted, or by those orders and requirements which are incidental to its functions and are adopted as means of their performance. There is nothing in the terms of the article in question [art. 12 of the Declaration of Rights], to except legislative bodies from its operation. The nature and purpose of the provisions are equally applicable to investigations conducted by the legislature itself, or by one of

its branches, or by a committee of its own members, as when conducted before the courts, or by commissioners, or other tribunals established by law. Such tribunals can in no case disregard this rule of protection. The legislature cannot, by the most formal and solemn enactments of law, authorize them to do it."

In *Kilbourn* v. *Thompson,* 103 U. S. 168, the sergeant at arms of the national House of Representatives was held liable to the plaintiff for an arrest on a warrant issued by the speaker on the order of the House. Four members of a committee of the House were impleaded in the same suit and held not liable. And in *Marshall* v. *Gordon,* 243 U. S. 521, the sergeant at arms of the House was held to respond to a writ of habeas corpus. In *Long* v. *Ansell,* 293 U. S. 76, it was held that a senator of the United States in attendance upon a session of Congress was not immune from the service of summons in an action for libel, though he could not be placed under arrest. See *Tenney* v. *Brandhove,* 341 U. S. 367, 376–377. The great weight of authority appears to hold that a member of the Legislature is not exempt from the service of any civil process not involving arrest. *Phillips* v. *Browne,* 270 Ill. 450. *Johnson* v. *Offutt,* 4 Met. (Ky.) 19. *Rhodes* v. *Walsh,* 55 Minn. 542. *Berlet* v. *Weary,* 67 Neb. 75. *Gentry* v. *Griffith, Hyatt & Co.* 27 Texas, 461. 94 A. L. R. 1470. In none of the authorities above cited do we find any support for the proposition that a member of the Legislature is exempt from suit by an individual designed to test the constitutionality of action of the legislator. The members of the commission who are not members of the Legislature cannot stand in any better position. See *Opinion of the Justices,* 331 Mass. 764. Neither are the clerks of the Senate and House exempt from suit, although they may have complete defences.

The several resolves creating or continuing the commission were statutes. The plaintiff contends that they were unconstitutional and did injury to her, particularly in the matter of what she calls the "blacklist." As in other cases of alleged injury to a person flowing from the operation of

allegedly unconstitutional statutes that person has the right
to test in court the questions of constitutionality and of
injury. There is nothing new in this. See *Attorney General*
v. *Brissenden,* 271 Mass. 172, 180; *Stockdale* v. *Hansard,*
9 Ad. & El. 1, 108–109, 148–149.

It has been suggested that the case has become moot be-
cause any harm to the plaintiff has already been suffered
past recall; but the trouble with this argument is that by
the terms of the latest resolve the commission in its final
report, to be filed not later than February 1, 1957, is re-
quired to report "the name and all other identifying data
available to the commission, of any individual, concerning
whom, the commission, *during the course of the investigation,*
has received creditable evidence that such individual was
or is a member of the communist party, a communist or a
subversive" (emphasis supplied). If the commission does
what it has been told to do, it will repeat the plaintiff's
name in its final "blacklist."

This is by no means a decision that the plaintiff is entitled
to prevail in all or any of her contentions. As to some of
them at least she may well encounter serious difficulties,
jurisdictional or otherwise. All issues on the merits of the
case are left wholly open. This opinion decides only that
the plaintiff has a right to present her case and for that
purpose to have process against all of the defendants, so
that all may be heard, before the case is disposed of as to
any of them.

The interlocutory decrees allowing the so called motions
to dismiss, treated as decrees sustaining demurrers directed
solely to want of jurisdiction, are reversed, without preju-
dice to the contention of the demurring defendants that the
court has no jurisdiction to grant the relief prayed for. The
final decree is reversed, and the case is to stand for service
upon the defendants not served. The defendants who have
demurred may stand upon their demurrers or, if so advised,
may be permitted to plead or answer on any pertinent
ground, including the ground that the court has no juris-
diction to grant the relief prayed for.          *So ordered.*