THE AETNA CASUALTY AND SURETY COMPANY *vs.*
CHARLES M. HILL & others.

Worcester. May 7, 1971. — June 11, 1971.

Present: TAURO, C.J., CUTTER, REARDON, QUIRICO, & BRAUCHER, JJ.

*Executor and Administrator,* Insolvent estate, Collection of assets. *Equity Jurisdiction,* To reach and apply.

Upon the filing in a Probate Court by an executor of a representation that the estate of the testator was insolvent, that court under G. L. c. 198, § 31, was the only court which could initially establish a claim against the insolvent estate. [632]

In a suit in equity in the Superior Court by the surety on a bond against a bank as executor of the will of the obligor, who had agreed to indemnify the plaintiff against loss on the bond, and as trustee under an insurance trust created by the testator, to reach and apply assets of the testator's estate to the plaintiff's claim, where it appeared that the bill was filed after the bank had filed a representation of insolvency of the estate in the Probate Court and the plaintiff had seasonably filed its claim in that court, that the bank, as executor, had not sought to bring assets it held as trustee under the insurance trust into the estate to pay the plaintiff's claim, or sought instructions as to its duties from the Probate Court, that on the facts a "motion to dismiss" the suit for lack of jurisdiction was properly allowed by interlocutory decree, and the final decree dismissed the bill "in accord" therewith, that unless the suit should be prosecuted on behalf of the estate it could not be maintained, and that it had been fully tried, this court reversed the interlocutory decree and the final decree, and remanded the suit to the Superior Court, to facilitate, if desired, further proceedings in the suit and the initiation of suitable proceedings in the Probate Court. [633–635]

BILL IN EQUITY filed in the Superior Court on February 28, 1966.

A motion to dismiss was heard by *McLaughlin, J.,* and the final decree was entered by *Meagher, J.*

*Morton C. Jaquith* for the plaintiff.

*Phillips S. Davis* for Worcester County National Bank, executor and trustee.

CUTTER, J.   The plaintiff (Aetna) brought this bill in equity in the Superior Court on February 28, 1966, against (1) Charles M. Hill (Charles), (2) Worcester County National Bank (the bank), which has qualified as executor of the will of David J. Hill (the testator) and is also the trustee of an insurance trust (the 1964 insurance trust) set up by the testator on November 20, 1964, as amended that day; and (3) various other persons.[1] . The bill (as three times amended) seeks (a) to establish Aetna's claim against the testator's estate; (b) to restrain further transfer of assets allegedly transferred to certain defendants, in fraud of creditors of the testator and of Charles; (c) to reach such assets in which the testator's estate is alleged to have a recoverable interest (because of fraudulent transfer, preference, trust, or otherwise); and (d) to require the bank, as executor and as trustee, to account for certain assets.

The following facts appear from the confirmed report of a master to whom the suit was referred, and from a stipulation between Aetna and the bank, in both capacities. The stipulation incorporated the master's report by reference.

Hill Construction Company (the company) was a firm of which Charles and the testator had been partners prior to the testator's death. Aetna had executed, as surety, a bond covering construction work done (apparently through the company) by Charles and the testator. They each

---

[1] Benjamin F. Miles, Second, Paul V. O'Leary and Marcel LeMay, trustees of Pine Tree Trust, and trustees of Colonial Realty Trust; Atlas Capital Corporation; M. Diana Hill, sister of Charles and the testator; Dorothy M. Hill (widow of the testator); Florence C. Hill (wife of Charles); Hill Construction Company; Webster Coöperative Bank; Atlantic Corporation; and William J. DiPietro.

agreed to indemnify Aetna against loss as surety. The two Hills defaulted on their work contracts. As a consequence, Aetna became liable for, and made payments of, $16,126.05 (which, with interest of $1,935.12, and $7,450 of legal expense, gave Aetna a total claim of $25,511.17 against both Charles and the testator).

The testator died on January 7, 1965. His will was allowed on March 9, 1965, and the bank qualified as executor by filing a bond. On December 21, 1965, the executor filed with the Probate Court a representation or "petition of probable insolvency" indicating debts and expenses of $37,110.43 and personal estate of $775. Within the six months allowed for filing claims, two claims were filed, including that of Aetna for $16,126.[2] "No adjudication of insolvency has been made" and there has been "no decree for distribution of assets." The bank, as executor, on September 19, 1966, filed a first and final account showing receipts (Sch. A) and disbursements (Sch. B) each of $2,857.66. This account has not been allowed.

On the testator's death, the bank, which held certain insurance policies on his life as collateral and as trustee, paid to itself, apparently as trustee under the 1964 insurance trust, a net balance of $65,577.03 of insurance proceeds, after various deductions. The testator had assigned certain policies to the bank as trustee. Some policies, taken out by the testator, had been assigned to his wife Dorothy M. Hill, who thereafter made the bank (as trustee under the 1964 insurance trust) beneficiary of the policies.

The 1964 insurance trust (art. *Second*) required the bank, as trustee, to collect at the testator's death certain insurance policies on the testator's life which were payable to the trust. The bank (see art. *Third* of the trust) was to hold

---

[2] The other claim was by the United States for unpaid income taxes. The plaintiff asserts that this preferred claim (see *Taylor* v. *United States*, 324 Mass. 639, 642–647, cert. den. 338 U. S. 948) was the subject of a judgment for the United States in an action (CA 68–679–W) in the District Court of the United States, District of Massachusetts, to be paid by the bank, as trustee of the testator's insurance trust. This does not appear to be disputed. Aetna thus claims to be the owner of "the sole unpaid claim . . . against the [testator's] estate."

the policies, their proceeds, and other trust property during the testator's life to pay income and principal to him at his request or in the bank's discretion. By art. *Third*, par. 2 (inserted by the amendment of November 20, 1964), the bank was "[u]pon the death of the Grantor [the testator] to pay from . . . income . . . or from principal or both, the source . . . to be solely in the Trustee's discretion, to the executor . . . of the Grantor's estate such sums as may be necessary for *debts*, funeral expenses, administration costs, and any . . . death tax of any nature which may be imposed by reason of the Grantor's death" (emphasis supplied). Paragraph 3 of art. *Third*, and succeeding paragraphs, made the trust's net income payable to the grantor's wife after his death, and (after the death of both the grantor and his wife) made provision for their children and issue.[3]

After the master's report was confirmed on January 15, 1968, the bank, as executor of the testator's will and as trustee of the 1964 insurance trust, filed a "motion to dismiss" the present bill on the ground that the Superior Court "is without jurisdiction of the subject matter of the suit." This motion, which we treat as essentially a demurrer (see *Luscomb* v. *Bowker*, 334 Mass. 468, 472–473), was allowed on October 14, 1969, after the Superior Court judge deciding the motion had found certain stipulated facts (recited above) to be true. A final decree was entered on February 6, 1970, allowing Aetna's claim against Charles Hill in the sum of $25,511.17; dismissing the bill against the bank as executor and as trustee, "in accord with the [d]ecree of October 14, 1969, allowing the [m]otion to [d]ismiss"; and dismissing the bill as to all other defendants (apparently on the merits as presented by the master's report). Aetna appealed from

---

[3] There thus may exist a substantial question, not directly presented on this record (or adequately argued), whether the assets of the 1964 insurance trust may be reached in any proceeding by the bank as executor brought against itself, as trustee under the 1964 insurance trust, and applied to payment of the testator's debt to Aetna. Unsettled issues include whether par. 2 or the later provisions of art. *Third* are controlling and whether the provisions of G. L. (Ter. Ed.) c. 175, § 125, and § 126 (as amended through St. 1943, c. 227, § 5) prevent insurance proceeds in the trust from being reached and applied.

the interlocutory decree allowing the "motion to dismiss" and from the final decree.

1. General Laws c. 198, § 31,[4] provides (in part), "Except as provided in . . . [§ 32] no action shall be maintained against an executor . . . after an estate has been represented insolvent, unless for a claim entitled to a preference which would not be affected by the insolvency of the estate or *unless the assets prove more than sufficient to pay all the debts allowed* . . ." (emphasis supplied).

The bank, as executor and trustee, argues in effect, in reliance on *Fourth Natl. Bank* v. *Mead,* 214 Mass. 549, that § 31 precludes any effort to establish the indebtedness of a decedent's estate which has been represented insolvent except before the Probate Court which has jurisdiction of the estate. Efforts in other courts by a creditor to compel an executor to attempt to reach and apply alleged assets of the estate have been treated (possibly in too broad language in the *Mead* case, 214 Mass. 549, 551) as improperly brought because of an interference with the administration of the insolvent estate committed to the Probate Court. See *Roper* v. *Murphy,* 317 Mass. 176, 178–179. We think that, under the cases just cited, the only court which initially could establish the extent of Aetna's claim against the insolvent estate is the Probate Court. The cases indicate that enforcement of the estate's claims to assets in the hands of others must be made by the executor itself, or, perhaps by proceedings brought in the executor's name pursuant to appropriate order of the Probate Court. See *Putney* v. *Fletcher,* 148 Mass. 247, 248–249; *Flynn* v. *Flynn,* 183 Mass.

---

[4] This section is somewhat affected by G. L. c. 198, § 32, which reads (emphasis supplied), "If it is not ascertained at the end of nine months after the granting of letters testamentary or of administration whether an estate represented as insolvent is or is not so in fact, any creditor *whose claim has not been presented for proof* may commence an action therefor against the executor . . . and such action may be continued without costs for the defendant until it appears whether the estate is insolvent; and if it is not insolvent, the plaintiff may prosecute the action as if no such representation has been made." Although the present bill was filed on February 28, 1966, eleven months after the bank qualified as executor (March 9, 1965), we assume that, because of the italicized language, Aetna (whose claim was presented for proof) receives no benefit from § 32. Cf. *Chadwick* v. *Taylor,* 337 Mass. 428, 431 (as to probable meaning of "presented for proof").

365, 366–367; *Dunbar* v. *Kelly,* 189 Mass. 390, 391–393; *Millen* v. *Kavanaugh,* 268 Mass. 73, 75.[5]

2. Under the decisions, a creditor of an insolvent estate is not without remedy. If an executor does not perform his duty to protect the estate's creditors by attempting to collect all assets as to "which there is reasonable ground to believe" a conveyance "was fraudulent" or as to which there is other reasonable claim on the part of the estate, "creditors have a right to insist that an . . . [executor] shall try the question; and if he refuses to do so after an offer of proper indemnity, he should be removed and another appointed . . . ." *Putney* v. *Fletcher,* 148 Mass. 247, 248 ("It is among the ordinary duties of an . . . [executor] to collect all the personal property of his" testator). See *McCarthy* v. *Griffin,* 299 Mass. 309, 311–312 (insurance policy).

3. The bank as executor, so far as this record shows, has made no effort whatsoever to bring any assets, held by itself as trustee under the 1964 insurance trust, into the insolvent estate to pay Aetna's claim. The record does not reveal whether this is because the bank's duty to attempt reasonably to collect all assets of the testator's estate is in conflict with some feeling of duty to protect the assets of the 1964 insurance trust for the testator's wife and issue. Indeed, instead of attempting diligently to reach and apply to Aetna's claim the 1964 insurance trust assets by a suit like the present one, which we assume that the bank as executor could have maintained in the Superior Court, it has attempted to thwart Aetna's efforts. It has not even sought the instructions of the Probate Court concerning its duty and probable conflict of interest in the premises.

We now do not attempt any suggestion concerning whether assets of the 1964 insurance trust may be reached by the executor (see fn. 3, *supra*). The provisions of art. *Third,* par. 2, of the trust instrument, by themselves, however, give

---

[5] See also *Cummings* v. *Cummings,* 143 Mass. 340, 343–344; *Norton* v. *Lilley,* 210 Mass. 214, 217; Newhall, Settlement of Estates (4th ed.) § 203; Lombard, Probate Law & Practice, §§ 697–698.

rise to a substantial question which Aetna is entitled to have decided on its merits.

4. Unless the bank as executor, or an administrator de bonis non with the will annexed appointed to replace the bank,[6] undertakes within a reasonable time to prosecute the present suit in behalf of the estate, the suit brought by Aetna cannot be maintained. On the facts, the "motion to dismiss" was properly allowed, although the bank, as executor, properly should have declined to join in the motion and, instead, allowed Aetna to control and prosecute the suit in the executor's name.

In any event it should be made clear in the final decree that the suit was dismissed without prejudice to the assertion of the estate's claims by a fiduciary, properly and competently representing the interests of the testator's estate and its creditors, in the Probate Court or in a separate suit. Accordingly the final decree is reversed. Further proceedings, however, may take place in the Superior Court and in the Probate Court, as outlined below.

5. This suit has been fully tried in the Superior Court. It appears likely that it can be decided on the confirmed master's report, if the bank as executor (or a successor fiduciary) consents (a) to the allowance of an amendment substituting as plaintiff the bank as executor (or a successor fiduciary) and (b) to proceeding on the present record, as it may be supplemented in the discretion of the Superior Court. To avoid retrial of the issues, if this be possible, the interlocutory decree allowing the "motion to dismiss" must also be reversed. Aetna may apply to the Probate Court for the removal of the bank as executor, or for an order directing the bank as executor to give Aetna control of so much of the present suit as seeks to reach and apply the assets of the 1964 insurance trust, or the bank may apply to the Probate Court for instructions. If arrange-

___

[6] It might unnecessarily increase expense for the Probate Court to remove the bank as executor. A possible course would be to permit Aetna or its attorney to control the litigation and to prosecute (in the bank's name) the bank's claim as executor against the 1964 insurance trust. Cf. *Burke* v. *Atlantic Research Corp.* 358 Mass. 764, 766–767.

ments have not been made for the continued prosecution of the present suit within 150 days after the receipt of the rescript in the Superior Court clerk's office, a new interlocutory decree ordering dismissal, and a new final decree (consistent with this opinion) dismissing the bill without prejudice may be entered upon motion.

6. The interlocutory decree and the final decree are reversed. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*