RUTH GAY & others[1] *vs.* PAULINE RICHMOND.

Suffolk.   January 10, 1980. — March 4, 1980.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Will,* Extrinsic evidence affecting construction.   *Probate Court,* Parties.
*Executor and Administrator,* Appointment, Bond.

A reference in a will to a named person whom the testatrix described as
   her sister-in-law and who was in fact the sister of the testatrix's first
   husband was not ambiguous, and, therefore, the sister of the testatrix's
   second husband had no standing to claim that she was the sister-in-law
   to whom the testatrix referred.   [336]
Although creditors and a legatee of an estate had standing to dispute an
   executrix's appointment and a probate judge erred in striking their ap-
   pearances, the question of the executrix's competence and suitability
   would not be reopened by vacating her appointment where none of
   the creditors' and legatee's claims would have been sufficient to permit
   the judge to reject the testatrix's choice of her executrix.   [336-337]
A probate judge erred in denying alleged creditors of an estate the right to
   be heard on the question whether the executrix should be exempt from
   giving a surety on her bond pursuant to G. L. c. 205, § 4.   [337-338]


PETITION filed in the Probate Court for the county of Suf-
folk on November 28, 1977.
   The case was heard by *Warner,* J.
   The case was submitted on briefs.
   *Julius B. Levine* for the plaintiffs.
   *William D. Barry* for the defendant.
   HALE, C.J.   On November 28, 1977, Pauline Richmond
filed a petition for probate of the will of Edna P. Kaplan
dated October 1, 1977.   Howard Kaplan, Julian Stag and
Jacob Kaplan (the Kaplan brothers) and Ruth Gay filed ap-
pearances on December 6, 1977; Nita Buglio filed an ap-

---

[1] Howard Kaplan, Julian Stag (formerly Kaplan), Jacob Kaplan and
Nita Buglio.

pearance on December 27, 1977. Richmond filed motions
to strike all those appearances for lack of standing. The mo-
tion to strike the appearances of the Kaplan brothers and
Gay was heard by a judge on statements of counsel and on
briefs submitted in support of and in opposition to the mo-
tion. Briefs were also filed on the motion to strike the
appearance of Buglio. Several theories were argued in sup-
port of their standing. The judge allowed both motions
without making written findings or rulings. A motion to
stay the probate proceedings pending this appeal was denied.
The will was allowed, and Richmond was appointed execu-
trix, her bond to be without sureties. The Kaplan brothers,
Gay and Buglio (the appellants) appeal only from the allow-
ance of the motions to strike.

The first clause of the will provides for seven $5,000
legacies. One such legacy is "to my sister in law Pauline
Richmond," and a second is "to my niece, Nita Buglio."
The third clause of the will gives the residue of the estate to
"my sister in law, Pauline Richmond." She is named execu-
trix by use of the same language in the fourth clause. Rich-
mond was the sister of the first husband of the testatrix. Gay
and the Kaplan brothers are, respectively, the sister and
brothers of the testatrix's second husband. Buglio is Gay's
daughter. None of the appellants is an heir of the testatrix.
Among the grounds asserted by the appellants in support of
their claims to standing is Gay's claim that she is entitled to
show that she was named in the will. Gay argues that as
Richmond had ceased to be the sister in law of the testatrix
when her brother, the testatrix's first husband, died, the
phrase "my sister in law Pauline Richmond," used three
times in the will, should be construed to refer to Gay, as she
was the only true sister in law of the testatrix at the time the
will was executed. Buglio makes various claims, including
one based on her mother's claim that she is named in the
will. Gay and the Kaplan brothers also claim that as credi-
tors of the estate they have standing to challenge the ap-
pointment of the executrix, and Buglio claims the same right
as a legatee.

We first dispose of Gay's claim that she is the "sister in law Pauline Richmond" named in the will. We agree with the judge's statement to counsel for the appellants made at the motion hearing that he was "really reaching" in making such a claim. The language of the will is unambiguous; the intent of the testatrix is unmistakable from that language. No claim as to the technical application of the term "sister in law" can change the fact that "Pauline Richmond" means Pauline Richmond, and there can be no doubt that the testatrix intended to refer to the sister of her first husband when she added the description "sister in law" to Richmond's name. Because there is no ambiguity on the face of the will, no extraneous matter could have been shown to create an ambiguity. *Whitbeck* v. *Aldrich,* 341 Mass. 326, 329 (1960). Gay had no standing on that basis.[2]

Gay and the Kaplan brothers also claim that they have standing as creditors of the estate to challenge the appointment of Richmond as executrix, by virtue of contract and tort claims they have asserted against the estate based on the failure of the testatrix to bequeath them property which she would receive from their brother's estate. Buglio claims this right as a legatee. The status of the four as creditors was conceded by Richmond at the hearing on the motion to strike their appearances. At that hearing she argued that under *Marcus* v. *Pearce Woolen Mills, Inc.,* 353 Mass. 483, 485-486 (1968), only a creditor of the decedent who has attached the decedent's property has standing to appear. *Marcus* is not authority for that principle. To the extent the judge relied on this argument in deciding the motion, he was in error.

---

[2] Buglio's argument that she acquired by a contract made with Gay an adverse interest sufficient to give her standing as a legatee to argue that her mother was the "sister in law" named in the will depends on her mother's claim of ambiguity in the will and therefore fails. See *Old Colony Trust Co.* v. *Bailey,* 202 Mass. 283, 290 (1909). Her other arguments in support of standing, other than her claim of standing to challenge the appointment of the executrix discussed below, are without merit and require no discussion.

The question whether a creditor or legatee has standing to challenge the appointment of a personal representative named in a will is distinct from the question of standing to challenge allowance of a will. No one can have an interest in the allowance of a will solely by reason of his being a creditor of the deceased, as it is of no concern to a creditor whether his debtor dies testate or intestate. *Monroe* v. *Cooper*, 235 Mass. 33, 34-35 (1920). A creditor or legatee does, however, have an interest in the competence and suitability of the executor, and therefore would have standing to dispute the executor's appointment. See G. L. c. 192, § 4; *Neal* v. *Boykin*, 129 Ga. 676, 682-683 (1907); *In re Hall's Estate*, 233 Iowa 1148, 1151-1152 (1943); Newhall, Settlement of Estates and Fiduciary Law in Massachusetts § 41, at 148 (4th ed. 1958). However, none of the vague charges of possible conflicts of interest made by the appellants against Richmond at the hearing on the motions to strike or in the briefs they submitted to the judge would have been sufficient, if proved, to permit him to reject the testatrix's choice of her executrix. See *Grossman* v. *Grossman*, 343 Mass. 565, 568 (1962); Newhall, *supra* § 46, at 164. See also *Colbert* v. *Hennessey*, 351 Mass. 131, 143-147 (1966) (removal of executor). Certainly, these claims do not provide us with a basis for reopening the question of the competence and suitability of the executrix by vacating her appointment. In fact, the appellants have not asked that we do so (Mass. R.A.P. 16[a][5], 365 Mass. 861 [1974]), and they did not appeal either from the denial of a stay pending appeal or from the appointment of the executrix.

Despite the appellants' stated preference not to "have to go and sue on a bond," they are fully protected as creditors in this case. Under G. L. c. 205, § 4, creditors have the right to be heard on the question whether the executrix shall be exempt from giving a surety on her bond.[3] We see no

---

[3] General Laws c. 205, § 4, as amended by St. 1941, c. 45, § 1, in pertinent part reads: "An executor shall be exempt from giving a surety on his bond if the testator has ordered or requested such exemption or that no

reason why Buglio, as a legatee, should not be afforded the same right.[4] If it is made to appear that a bond with surety is needed, the executrix can be required to furnish one. Should the executrix fail to do so, if so required, she would in effect remove herself from the trust.[5]

It was error to have denied the appellants the right to be heard on the matter of requiring sureties. We are of the opinion that this right must now be afforded to them.

The orders striking the appearances are vacated. The appellants are to be allowed to file motions under G. L. c. 205, § 4.

*So ordered.*

---

bond be required . . . but not until all creditors of the estate . . . have been notified and have had opportunity to show cause against the same. The probate court may, however, upon or after the granting of letters testamentary . . . require bond, with sufficient sureties, and failure to furnish the same within such time as the court orders shall constitute a declination of or a resignation from the trust."

[4] If Buglio has been paid her legacy during the pendency of these proceedings, she is no longer in a position to be heard.

[5] The appellants are not without other rights if an executrix fails or is unable to bring an action to enforce a claim in favor of the estate. See G. L. c. 230, § 5. See also *Aetna Casualty & Surety Co.* v. *Hill,* 359 Mass. 628, 633 (1971). See further G. L. c. 195, § 11.